ACCEPTED
01-14-00601-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/2/2015 6:20:13 PM
CHRISTOPHER PRINE
CLERK

**GARDERE**

*attorneys and counselors* ▪ *www.gardere.com*

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

4/2/2015 6:20:13 PM

CHRISTOPHER A. PRINE
Clerk

John MacVane
Direct Dial: 713-276-5281
Direct Fax: 713-276-6281
Email: jmacvane@gardere.com

April 2, 2015

Christopher A. Prine, Clerk
Court of Appeals, First District
301 Fannin Street
Houston, TX 77002-2066

Re:  No. 01-14-00601-CV; *Rosehurst Homeowners Association v. Hughes Natural Gas, Inc. and Real Provencher*
(On appeal from the County Court at Law No. 2 of Harris County, Texas, Case No. 980933)

Recent Authority Addressing Sufficiency of Evidence to Support Appellate Fees

Dear Mr. Prine:

Please circulate this letter to the panel assigned to this matter.

An issue in this appeal is whether trial counsel's unrebutted affidavit testimony regarding reasonable appellate fees sufficed to support the trial court's award of appellate fees to Hughes Natural Gas, Inc. ("Hughes").

The Fourteenth Court of appeals recently issued an opinion addressing similar evidence of appellate fees and held that the evidence sufficed to support the trial court's award.

Gardere01 - 6576648v.1

GARDERE WYNNE SEWELL LLP

1000 Louisiana, Suite 3400, Houston, Texas 77002-5011 ▪ 713.276.5500 Phone ▪ 713.276.5555 Fax

Austin ▪ Dallas ▪ Houston ▪ Mexico City

In *Messier v. Messier*, No. 14-13-00572-CV, 2015 WL 452171, at *10 (Tex. App.—Houston [14th Dist.] Jan. 27, 2015, no. pet. h.) (a copy of which follows this letter), the evidence of appellate fees consisted of:

1. Counsel's testimony;
2. A stipulation to counsel's rate and qualifications;
3. Billing statements for trial work; and
4. The judge's presumed familiarity with the complexity of the case, the size of the record, and potential issues on appeal.

Just as in *Messier*, trial counsel in this case testified to the amount of reasonable fees. And—though counsel's rate and qualifications in this case were not stipulated—they were never challenged. In addition, trial counsel provided a lengthy and detailed account of the work performed in the case. Finally, not only was the trial court in this case presumptively familiar with the nature of the appeal, it expressly took notice of the contents of its file in awarding Hughes's appellate fees. CR 191.

It also bears noting that while *Messier* involved a fee award under the Family Code, the trial court awarded appellate fees in this case to sanction Rosehurst for "significantly interferr[ing] with the Court's exercise of its core power to decide issues of fact and questions of law." CR 191. The trial court's findings are therefore entitled to particular deference. *See Glass v. Glass*, 826 S.W.2d 683, 688 (Tex. App.—Texarkana 1992, writ denied) ("[T]he choice of the appropriate sanctions is for the trial court to determine, and so long as the sanctions are within the authority vested in the trial court, they will not be overturned unless they constitute a clear abuse of discretion.")

For these reasons, the evidence of appellate fees in this case suffices to support the trial court's award, just as the evidence did in *Messier*.

Sincerely,

John MacVane

cc:     J. Marcus Hill
        Hill & Hill, P.C.
        1770 St. James Place, Suite 115
        Houston, Texas 77056
        **[via efile]**

cc:     Kevin Dubose
        Alexander Dubose Jefferson & Townsend LLP
        1844 Harvard St.
        Houston, Texas 77008
        **[via efile]**

cc:     Michael P. Fleming
        Michael P. Fleming & Associates
        440 Louisiana, Suite 1920
        Houston, Texas 77002
        **[via efile]**

cc:     Mike Stafford [Firm]
        Stacy R. Obenhaus [Firm]
        Katharine David [Firm]

2015 WL 452171
Only the Westlaw citation is currently available.
OPINION
Court of Appeals of Texas,
Houston (14th Dist.

Luc J. Messier, Appellant

v.

Katy Shuk Chi Lau Messier, Appellee

NO. 14–13–00572–CV    |
Opinion filed January 27, 2015

**Synopsis**
**Background:** Former wife brought postdissolution action seeking enforcement of order awarding her a share of former husband's stock options and clarification of divorce decree. The 311th District Court, Harris County, Denise Pratt, J., entered order requiring former husband to exercise options on stock and awarded former wife attorney fees. Former husband appealed.

**Holdings:** The Court of Appeals, Martha Hill Jamison, J., held that:

[1] issues relating to former husband's failure to exercise stock options were rendered moot by his compliance with trial court's order requiring him to exercise the stock options and deliver proceeds to former wife;

[2] divorce decree unambiguously afforded former wife the right to determine when her portion of stock options should be exercised;

[3] trial court was authorized to award former wife attorney fees even absent a finding of contempt;

[4] former wife was not entitled to award for expert witness fees;

[5] former wife was not required to segregate fees between claims for which they were recoverable and claims for which they were not;

[6] evidence was sufficient to support former wife's award of appellate attorney fees; and

[7] former wife's award of appellate attorney fees was modified on appeal to make it contingent on her success on appeal.

Affirmed in part; vacated in part; judgment modified in part.

West Headnotes (32)

**[1]**   **Appeal and Error**
          👉 Matters Not Necessary to Decision on Review
The appellate court cannot decide moot issues.

Cases that cite this headnote

**[2]**   **Appeal and Error**
          👉 Determination of questions of jurisdiction in general
Mootness is a jurisdictional issue, and the appellate court is required to review such issues even if not raised by the parties.

Cases that cite this headnote

**[3]**   **Divorce**
          👉 Issues not necessary to review
Issues raised by former husband on appeal relating to trial court's judgment that purported to clarify the parties' divorce decree and which found that former husband had breached his fiduciary duty to former wife by failing to exercise options on her share of stock as required by the decree were rendered moot by former husband's compliance with trial court's order requiring him to exercise the stock options and deliver proceeds to former wife; trial court's "clarifications" of the decree no longer had any possible force or effect, given that the options had been exercised and proceeds distributed to former wife's satisfaction.

Cases that cite this headnote

**[4]**   **Costs**
          👉 Particular Actions or Proceedings

Attorney fees are generally not recoverable for breaches of fiduciary duties.

Cases that cite this headnote

**[5]** **Divorce**
    👉 Methods of Distribution
**Divorce**
    👉 Construction and interpretation

Divorce decree unambiguously afforded former wife the right to determine when her portion of stock options should be exercised; contrary to former husband's assertion on appeal, the constructive trust was not created to afford him discretion in exercising the options in order to maximize former wife's benefit, and the additional language in the decree regarding who had control of the options in the event of former husband's death may have been included simply to prevent any confusion should former husband die before the options were exercised.

Cases that cite this headnote

**[6]** **Divorce**
    👉 Amendments, additional proofs, and trial of cause anew
**Divorce**
    👉 Enforcement and arrearages

A trial court's ruling on a motion for enforcement of divorce decree is reviewed under an abuse of discretion standard; however, issues regarding interpretation of a divorce decree are subject to de novo review on appeal.

Cases that cite this headnote

**[7]** **Divorce**
    👉 Authority and discretion of court

If the divorce decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used.

Cases that cite this headnote

**[8]** **Trusts**

**[9]** **Trusts**
    👉 Nature of constructive trust

A constructive trust is imposed when one party holds property that legally belongs to the other.

Cases that cite this headnote

**[9]** **Trusts**
    👉 Nature of constructive trust

The scope and application of a constructive trust is generally left up to the court imposing it.

Cases that cite this headnote

**[10]** **Appeal and Error**
    👉 Attorney fees
**Appeal and Error**
    👉 Questions of Fact on Motions or Other Interlocutory or Special Proceedings

The appellate court reviews a trial court's decision to grant attorney fees under an abuse of discretion standard, but reviews the amount of attorney fees awarded under a legal sufficiency standard.

Cases that cite this headnote

**[11]** **Divorce**
    👉 Conduct of litigation; misconduct in general
**Divorce**
    👉 Nature of proceeding as factor in general

Trial court was authorized to award former wife attorney fees in action to enforce divorce decree even absent a finding of contempt; regardless of whether trial court held former husband in contempt, former wife nonetheless was required to pursue the lawsuit after former husband refused to exercise her share of parties' stock options upon her demand and deliver the proceeds to her, and fee statute authorized trial court to award reasonable attorney fees in a proceeding to enforce a decree. Tex. Fam. Code Ann. § 9.014.

Cases that cite this headnote

**[12]** **Divorce**
    👉 Nature of proceeding as factor in general

**Divorce**
 Attorney Fees

A trial court may award reasonable attorney fees in a divorce decree enforcement or clarification action.

Cases that cite this headnote

**[13] Divorce**
 Existence of other remedy

Contempt is not the only available remedy in a suit to enforce a divorce decree.

Cases that cite this headnote

**[14] Divorce**
 Estoppel

Evidence was sufficient to establish reasonableness of attorney fees awarded to former wife who succeeded in action to enforce divorce decree; having stipulated to opposing counsel's qualifications and that he would provide testimony supporting the reasonableness of his fees, without the necessity of actually having to provide such testimony, and having failed to contest the evidence of fees, former husband's counsel essentially conceded that there was at least some evidence to support the reasonableness of the fees.

Cases that cite this headnote

**[15] Appeal and Error**
 Total failure of proof

The appellate court will reverse a determination of the reasonableness of attorney fees awarded on the basis of a legal sufficiency challenge only if there is no evidence to support the determination.

Cases that cite this headnote

**[16] Costs**
 Items and amount; hours; rate

Factors that a fact finder should consider when determining the reasonableness of an attorney fee award include: the time, labor and skill required to properly perform the legal service; the novelty and difficulty of the questions involved; the customary fees charged in the local legal community for similar legal services; the amount involved and the results obtained; the nature and length of the professional relationship with the client; and the experience, reputation and ability of the lawyer performing the services.

Cases that cite this headnote

**[17] Costs**
 Evidence as to items

When determining whether the amount of an attorney fee award is reasonable, a trial court need not hear evidence on each reasonableness factor but can consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties.

Cases that cite this headnote

**[18] Divorce**
 Particular services

**Divorce**
 Nature of proceeding as factor in general

Former wife was not entitled to award for expert witness fees, in postdissolution divorce decree enforcement action; the statutes authorizing awards of attorney fees and costs in enforcement actions simply did not allow for an award of expert witness expenses in an enforcement action. Tex. Fam. Code Ann. §§ 9.013, 9.014.

Cases that cite this headnote

**[19] Costs**
 Experts

Generally speaking, the fee of an expert witness constitutes an incidental expense in preparation for trial and is not recoverable as costs.

Cases that cite this headnote

**[20] Costs**

🔑 American rule; necessity of contractual or statutory authorization or grounds in equity

**Costs**
🔑 Form and requisites of application in general

Absent a contract or statute, trial courts do not have inherent authority to require one party to pay another party's attorney's fees; thus, claimants generally are required to segregate fees between claims for which they are recoverable and claims for which they are not.

Cases that cite this headnote

**[21]** **Costs**
🔑 Form and requisites of application in general

When discrete legal services advance both a recoverable and unrecoverable claim, the resulting fees are considered intertwined and need not be segregated between claims for which they are recoverable and claims for which they are not.

Cases that cite this headnote

**[22]** **Costs**
🔑 Form and requisites of application in general

If any attorney's fees relate solely to a claim for which fees are unrecoverable, a claimant must segregate the recoverable from the unrecoverable fees.

Cases that cite this headnote

**[23]** **Divorce**
🔑 Affidavit, summary or itemization

Former wife was not required to segregate fees between claims for which they were recoverable and claims for which they were not, in postdissolution divorce decree enforcement action; all of former wife's causes of action involved essentially the same allegations regarding the same facts and sought essentially the same ultimate relief, which was an order requiring former husband to exercise her share of stock options as she directed and disbursement

of the proceeds to her, and former wife's counsel testified that the billing statements admitted into evidence represented "fees that were incurred solely for this enforcement," to which former husband's counsel did not object.

Cases that cite this headnote

**[24]** **Costs**
🔑 Form and requisites of application in general

The party seeking to recover attorney fees has the burden of demonstrating that segregation between claims for which fees are recoverable and claims for which they are not is unnecessary.

Cases that cite this headnote

**[25]** **Appeal and Error**
🔑 Attorney fees

A trial court's award of appellate attorney fees is reviewed for an abuse of discretion.

Cases that cite this headnote

**[26]** **Costs**
🔑 Taxation of costs on appeal or error

To support an award of appellate attorney fees, there must be evidence of the fees' reasonableness pertaining to appellate work.

Cases that cite this headnote

**[27]** **Divorce**
🔑 Appeal or review

**Divorce**
🔑 Evidence in general

Evidence was sufficient to support former wife's award of appellate attorney fees, in postdissolution action to enforce divorce decree; former husband's counsel stipulated to the qualifications and rate charged by former wife's counsel, billing statements were admitted into evidence showing the work done on trial of the case, and the judge herself would have been familiar with the complexity of the case, the size of the record, and potential issues on appeal.

Cases that cite this headnote

**[28]　Costs**

　　🔑 Taxation of costs on appeal or error

A trial court may not grant a party an unconditional award of appellate attorney fees because to do so could penalize a party for taking a meritorious appeal.

Cases that cite this headnote

**[29]　Appeal and Error**

　　🔑 Modifying provisions of judgment or order

An unconditional award of attorney fees for appeal does not require reversal; instead, the appellate court may modify a trial court's judgment to make the award of appellate attorney's fees contingent upon the receiving party's success on appeal.

Cases that cite this headnote

**[30]　Divorce**

　　🔑 Attorney fees and costs

Trial court's order awarding former wife appellate attorney fees in postdissolution action to enforce divorce decree was modified by Court of Appeals to make it contingent on former wife's success on appeal.

Cases that cite this headnote

**[31]　Costs**

　　🔑 Taxation of costs on appeal or error

Because an award of appellate fees depends on the outcome of the appeal, it is not a final award until the appeal is concluded and the appellate court issues its judgment; thus, the fees will not be due and interest on those fees will not begin to accrue until the appellate court issues its judgment.

Cases that cite this headnote

**[32]　Divorce**

　　🔑 Attorney fees and costs

Trial court's order requiring former husband to pay former wife's appellate fees within a day after she perfected her appeal in an intermediate appellate court or sought review in the Supreme Court and providing that post-judgment interest would begin to accrue on the amount awarded for appellate fees as of the date the trial court entered its judgment in the postdissolution divorce decree enforcement action was modified by Court of Appeals to clarify that payment of the fees was not due, and interest on the fees did not begin, until the appellate court issued its judgment.

Cases that cite this headnote

**On Appeal from the 311th District Court, Harris County, Texas, Trial Court Cause No. 2009–45158. Denise Pratt, Judge**

**Attorneys and Law Firms**

Sallee S. Smyth, Richmond, TX, for Appellant.

Pamela E. George, Bobby King Newman, Houston, TX, for Appellee.

Panel consists of Justices Boyce, Jamison, and Donovan.

**OPINION**

Martha Hill Jamison, Justice

**\*1** Luc J. Messier appeals from the trial court's order purporting to enforce and clarify portions of the final decree of divorce between Luc and his ex-wife, Katy Shuk Chi Lau Messier. The issues below and on appeal revolve around community property stock options held in Luc's name. A portion of these options were awarded to Katy in the decree, and the principal dispute concerns whether Luc was required to exercise the options upon Katy's demand or, instead, was entitled or required to use his own discretion in deciding when to execute them. The trial court determined that the options had to be exercised on Katy's demand and issued an order providing for enforcement mechanisms. The trial court further found that, in failing to exercise the options on Katy's demand, Luc breached his fiduciary duty to Katy, and the court awarded Katy attorney's fees.

In four issues, Luc contends that the trial court erred in (1) construing the decree as requiring Luc to exercise the options on Katy's demand, (2) "clarifying" the decree by adding detailed orders for Luc to perform and consequences for failure to do so, (3) holding Luc breached his fiduciary duty, and (4) awarding Katy her attorney's fees. Because certain claims and issues have become moot during the pendency of the appeal, we vacate the portions of the trial court's order that purport to clarify the divorce decree and that hold Luc breached his fiduciary duty to Katy, and we dismiss those claims. Additionally, we modify the award of Katy's attorney's fees. We affirm the trial court's order as modified.

### I. Background

The final decree was signed on February 11, 2011. Among other things, the decree divided the marital estate and determined issues relating to the custody of the children of the marriage.[1] As part of the division of property, Katy was awarded a 60% interest and Luc a 40% interest in a number of stock options that Luc had earned through his employment during the marriage as a senior executive for ConocoPhillips.[2] Specifically, as to Luc's share, the decree awarded him "[t]he following ConocoPhillips Stock Option Awards, representing 40% of the community portions from [Luc's] employment, subject to all related tax liabilities and withholdings...." The decree then listed specific numbers of options from among nine sets of options earned on particular days, for example: "16,320 options of the vested options attributable to the 40,800 options from the 02/08/07 award with an exercise price of $66.37." In the portion of the decree awarding property to Katy, it awarded her "[a] portion of the benefits, if any, received by Luc ... upon exercise of the following ConocoPhillips Stock Option Awards, representing 60% of the community portions from [Luc's] employment, subject to all related actual tax liabilities and withholdings...." It then listed nine sets of options corresponding to the nine sets listed for Luc, for example, "24,480 options of the vested options attributable to the 40,800 options from the 02/08/07 award with an exercise price of $66.37."

**\*2** A subsequent section of the decree contained "Special Provisions Regarding Stock Options." This section stated in part:

The award to [Katy] of a portion of the community stock options is subject to all of the terms, conditions and restrictions of the Company's Stock Incentive Plan ... as well as other restrictions that may be imposed by the Company, such as those designated in the Company's insider trading policy.

Pursuant to the terms of the Plans, the stock options awarded to [Katy] cannot be assigned and/or transferred from [Luc] to [Katy] by the Company. The parties acknowledge that (i) the stock options awarded to [Katy] may be exercisable only by [Luc] (or [Luc's] legal representative or estate) and (ii) the exercise of the stock options may be subject to restrictions by reason of [Luc's] employment, including but not limited to the applicable insider trading rules and regulations. However, [Katy] shall have equitable ownership of the stock options awarded to [Katy].

[Katy's] stock options are subject to a constructive trust. [Katy's] rights in and to the stock options awarded to [Katy] herein, and all benefits appurtenant thereto, shall inure to the benefit of [Katy's] heirs, executors and assigns. Similarly, [Luc's] obligations as set forth herein shall be binding on [Luc] and on [Luc's] heirs, executors, administrators and assigns. Upon the death of [Luc], any stock options awarded to [Katy] which are still exercisable shall be exercised by [Luc's] executor or administrator, or by the person who acquires such stock options by will or the laws of descent and distribution, or otherwise by reason of the death of [Luc], as directed by [Katy].

[Luc] shall account for taxes assessed on the exercised stock options and shall cause the proceeds from the stock option exercise, net of taxes assessed, to be transferred to [Katy]. [Katy] shall pay all taxes related to any portion of benefits awarded to her herein by either reporting the income and related withholdings on her return(s), or reimbursing [Luc] for any taxes he is required to pay on amounts awarded to her that are in excess of the related withholdings on her portion.

When [Luc] exercises any option in which [Katy] has an interest ..., he will account to her by delivering the net proceeds. The division of the options will be proportionate between [Luc's] separate property and the community property portions henceforth owned jointly between [Luc] and [Katy], and the division of the community property portions of the options shall be 60% to [Katy] and 40% to [Luc].

In April 2012, Katy filed suit in the court of continuing jurisdiction after Luc declined to exercise the stock options on her demand.[3] In her Third Amended Motion, her live pleading at the time of trial, Katy essentially contended that the final decree unambiguously established rights and duties that Luc had failed to follow. On that basis, she sought enforcement of the decree, damages for breach of fiduciary duty, imposition of a fine among other relief for contempt, an accounting, and declaratory judgment setting forth Luc's obligations relating to the options. In the alternative, she sought clarification of the decree.

**\*3** During a hearing on December 19, 2012, Luc testified that he believed that under the final decree, he had a duty as the constructive trustee to use his discretion in deciding when to exercise the options so as to maximize the benefit for Katy. Luc introduced evidence that the options had increased significantly in value from the time of Katy's demand to the time of trial. Luc acknowledged, however, that at least a part of his motivation in refusing to exercise the options upon Katy's demand was to prevent Katy from leaving the country with the children in violation of travel restrictions placed upon her in the final decree. Katy presented a financial expert who emphasized the significant differences between the financial situations of Luc and Katy and suggested Katy had a more immediate need for access to the options proceeds than did Luc.

The court signed an Order of Enforcement of Final Decree of Divorce and Order of Clarification of Property Division on March 25, 2013. In the order, the court held that Luc breached his fiduciary duty as constructive trustee of Katy's stock options by failing to exercise the options on her request. The order also included declarations or clarifications requiring Luc to exercise within 24 hours the options that Katy already had requested be exercised and imposing a fine of $5,000 a day for each business day that he failed to do so.[4] The court further ordered Luc to exercise any options requested by Katy no later than 10 a.m. on the first day following the expiration of 48 hours from the receipt of written notice to exercise the options. The order additionally included provisions governing the possibility that requests may come during periods when Luc was prohibited from exercising the options and provisions ensuring distribution of the proceeds to Katy.

In its order, the court further awarded Katy her "reasonable and necessary" attorney's fees and costs of $59,198.75, plus additional amounts in the event Luc filed an appeal.[5] The court stated that the fees were "warranted for numerous reasons including the delay caused by [Luc's] refusal to exercise [options] upon [Katy's] request." The court also stated that Luc had stipulated to the amount and reasonableness of the fees. The court subsequently issued a set of 134 separately numbered findings of fact and conclusions of law. Luc requested additional findings. Among the findings, the court stated that Luc "did not have unlimited discretion as to whether to exercise the stock options awarded to Katy" and he breached his fiduciary duty and failed to comply with the decree when he refused to exercise options as Katy requested. During oral argument before this court, counsel representing both parties informed the court that Luc has exercised all of the stock options that were the subject of this action and delivered the proceeds to Katy.

## II. The Mootness Doctrine

**[1] [2] [3]** As stated, counsel for both parties have represented to this court that Luc has, in fact, exercised all of the options assigned to Katy in the decree and delivered the proceeds to her as per her request. In post-submission briefing, Katy's counsel has indicated acceptance of Luc's performance and no intention to pursue any further enforcement, claims, or remedies concerning the exercise of the options and distribution of the proceeds. We cannot decide moot issues. *See, e.g., Valley Baptist Med. Ctr. v. Gonzalez,*33 S.W.3d 821, 822 (Tex.2000) (per curiam) (holding appeal of trial court's order became moot once appellant complied with order and court of appeals was notified of compliance and court of appeals erred in issuing advisory opinion on merits of appeal).[6] The question then becomes which, if any, of Luc's appellate issues still present live controversies requiring resolution by this court. *See Robinson v. Alief I.S.D.,* 298 S.W.3d 321, 324 (Tex.App.–Houston [14th Dist.] 2009, pet. denied)* ("The mootness doctrine precludes a court from rendering an advisory opinion in a case where there is no live controversy."); *Thompson v. Ricardo,* 269 S.W.3d 100, 103 (Tex.App.–Houston [14th Dist.] 2008, no pet.)* ("[I]f a judgment cannot have a practical effect on an existing controversy, the case is moot and any opinion issued on the merits in the appeal would constitute an impermissible advisory opinion.").

**\*4** As set forth above, Luc raises four issues in this appeal, contending the trial court erred in (1) construing the decree as requiring Luc exercise the options on Katy's demand,

(2) "clarifying" the decree by adding detailed orders for Luc to perform as directed and consequences should he fail to do so, (3) holding Luc breached his fiduciary duty, and (4) awarding Katy attorney's fees. The attorney's fees issue clearly still presents a live controversy as Katy has not relinquished her claim to the award and Luc has not conceded that he should have to pay the fees. *See Allstate Ins. Co. v. Hallman,* 159 S.W.3d 640, 642–43 (Tex.2005) (holding that a dispute concerning attorney's fees preserved a live controversy in an otherwise moot appeal); *Camarena v. Tex. Emp't Comm'n,* 754 S.W.2d 149, 150–51 (Tex.1988) (same). Similarly, the question of who possessed the right to decide when the options would be exercised is likewise a live controversy because in exercising the options and distributing the proceeds to Katy, Luc did not concede that she had the right to demand he take these actions and, if Luc is correct that he had the right to determine when to exercise the options, there would be no basis for awarding attorney's fees to Katy. *See Camarena,* 754 S.W.2d at 151 (noting propriety of attorney's fees award was in part dependent on success on the merits). These two issues are, therefore, not moot and still need to be resolved in this appeal.

 **[4]** However, because the trial court's "clarifications" no longer have any possible force or effect, given that the options have been exercised and proceeds distributed to Katy's satisfaction, the clarifications and the appellate issue challenging them have been rendered moot. Likewise, because the only remedy clearly provided based on the breach of fiduciary duty finding was the clarifications, and they have no possible force or effect, the breach of fiduciary duty issue is also rendered moot. Accordingly, we vacate the portions of the trial court's judgment that purport to clarify the divorce decree and that hold Luc breached his fiduciary duty to Katy, and we dismiss Katy's causes of action seeking clarification and alleging breach of fiduciary duty. *See Houston Mun. Emps. Pension Sys. v. Ferrell,* 248 S.W.3d 151, 153–54, 156–57 (Tex.2007) (vacating portions of court of appeals' judgment and trial court's order that became moot after plaintiff nonsuited cause of action and dismissing that cause of action); *Daftary v. Prestonwood Mkt. Square, Ltd.,* 399 S.W.3d 708, 710 (Tex.App.–Dallas 2013, pet. denied) (vacating portion of judgment awarding possession of property and dismissing moot claim); *Lawton v. Lawton,* No. 01–12–00932–CV, 2014 WL 3408699, at *1, 5 (Tex.App.–Houston [1st Dist.] July 10, 2014, no pet.) (mem. op.) (vacating portion of order granting summary judgment on moot claims and dismissing those claims); *McConnell v. State Farm Lloyds,* No. 03–98–00078–CV, 1999 WL 816736, at *5 (Tex.App.–Austin Oct. 14, 1999, pet. denied) (not designated for publication) (vacating judgment on claim rendered moot by change in the law and dismissing that claim). [7]

 **\*5** We will now proceed to consider the remaining live issues concerning the trial court's construction of the decree and award of attorney's fees. *See In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex.2005) (orig. proceeding) ("A case is not rendered moot simply because some of the issues become moot during the appellate process.").

### III. Construction of the Decree

 **[5]** In his first issue, Luc contends that the trial court erred in interpreting the decree as requiring him to exercise the options on Katy's demand. To the contrary, Luc asserts that the decree afforded him the discretion to decide when to exercise the options. As explained above, this issue still presents a live controversy as it pertains to the question of whether Katy is entitled to her attorney's fees.

 **[6]** **[7]** A trial court's ruling on a motion for enforcement is reviewed under an abuse of discretion standard; however, issues regarding interpretation of a divorce decree are subject to de novo review on appeal. *Shanks v. Treadway,* 110 S.W.3d 444, 447 (Tex.2003). The general rules regarding the construction of judgments are applied. *Id.* "If the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used." *Id.* We agree with the trial court that the decree unambiguously afforded Katy the right to determine when her portion of the options should be exercised.

Luc's primary argument is a negative one: at no point in the decree does it expressly require him to exercise the options on Katy's demand. The decree, however, also is devoid of any express language authorizing or requiring Luc to use his own discretion regarding when to exercise the options. Moreover, the decree clearly awards certain of the options to Katy as her property and gives her control over that property.

Luc acknowledged in his testimony that Katy's options could be exercised separately from his own options, even those awarded on the same day. [8] Indeed, the decree culls out a specific number of options for Katy for each date on which options were awarded to Luc. As explained in the

decree, the ConocoPhillips Stock Incentive Plan prevented transfer of ownership of the options themselves; Katy could receive the proceeds only upon exercise. For this reason, the decree awarded her "[a] portion of the benefits, if any, received by Luc ... upon exercise of the following ... Awards," and it described her ownership of the options as "equitable ownership" and established a constructive trust over the options prior to their exercise. Equitable ownership is commonly defined as "the present right to compel legal title." *See, e.g., AHF–Arbors at Huntsville I, LLC v. Walker Cnty. Appraisal Dist.,* 410 S.W.3d 831, 837 (Tex.2012). The court, by awarding equitable ownership, therefore intended to give Katy the right to direct when the options would be exercised. [9] The decree repeatedly describes the award to Katy as "[t]he award to [Katy] of a portion of the community stock options" and "the stock options awarded to [Katy]." It is clear that this was Katy's property.

**\*6** **[8]** **[9]** Luc insists that the creation of a constructive trust necessarily provided him with the authority and discretion to determine when the options awarded to Katy were to be exercised, but in doing so, he appears to misunderstand the nature of a constructive trust. [10] A constructive trust is imposed when one party holds property that legally belongs to the other. *See In re Marriage of Harrison,* 310 S.W.3d 209, 214 (Tex.App.–Amarillo 2010, pet. denied) ("[C]onstructive trusts are used to right a wrong or prevent unjust enrichment...."). The scope and application of a constructive trust is generally left up to the court imposing it. *Baker Botts, L.L.P. v. Cailloux,* 224 S.W.3d 723, 736 (Tex.App.–San Antonio 2007, pet. denied). There is no indication in the court's creation of a constructive trust or the language of the decree that gave Luc discretion to determine when to exercise the options.

Luc additionally points to language in the decree providing that "[w]hen [he] exercises any option in which [Katy] has an interest ..., he will account to her by delivering the net proceeds" as indicating he was to exercise his discretion in determining when to exercise her options. This language, however, merely reiterates the fact that only Luc could legally perform the mechanical process of exercising the options and describes what must happen once he performs that function. It does not suggest that he had the right to determine when the options were exercised.

Next, Luc points to decree language providing that Katy had a right to direct the exercise of any remaining options upon Luc's death. Luc relies on this language to argue that, in

parallel fashion, the decree would have expressly authorized Katy to direct the exercise of any remaining options during Luc's lifetime if the trial court had intended to create such a right. However, as discussed above, the decree clearly gave Katy the right to exercise her options during Luc's lifetime. The additional language regarding who had control of the options in the event of Luc's death may have been included simply to prevent any confusion should Luc die before the options were exercised.

The trial court did not err in holding that the decree unambiguously gave Katy the right to determine when the options assigned to her would be exercised. Accordingly, we overrule Luc's first issue.

### IV. Attorney's Fees & Expenses

**[10]** In his fourth issue, Luc challenges the trial court's award of $59,198.75 in attorney's fees, costs, and expenses. We review a trial court's decision to grant attorney's fees under an abuse of discretion standard, but we review the amount of attorney's fees awarded under a legal sufficiency standard. *Am. Risk Ins. Co. v. Abousway,* No. 14–13–00124–CV, 2014 WL 2767402, at \*5 (Tex.App.–Houston [14th Dist.] June 17, 2014, no pet.) (mem. op.).

Luc raises numerous sub-issues related to this award, and we have grouped them into the following categories for discussion purposes: (1) the award was in error because Katy did not succeed on her contempt claim, (2) the evidence is legally insufficient to support the award, (3) there is no legal or factual basis for the award of expert fees, (4) Katy failed to properly segregate fees for causes of action on which fees are recoverable from those for which they are not, and (5) the award of appellate fees was in error for multiple reasons. We will address each set of arguments in turn, finding merit in some but not all.

### A. Contempt Claim

**\*7** **[11]** We begin with Luc's assertion that Katy was not entitled to recover attorney's fees because the trial court did not hold Luc in contempt. The gist of the argument appears to be that (1) the trial court did not hold Luc in contempt; (2) therefore, it must have granted Katy judgment based on her breach of fiduciary duty cause of action; and (3) attorney's fees generally cannot be recovered on a claim for breach of fiduciary duty. *See Hollister v. Maloney, Martin &*

*Mitchell LLP,* No. 14–12–00529–CV, 2013 WL 2149823, at \*2 (Tex.App.–Houston [14th Dist.] May 16, 2013, no pet.) (mem. op.).

 **[12]**   **[13]**  Katy pleaded generally for attorney's fees and pleaded several grounds that could potentially support an award of attorney's fees, including a declaratory judgment action and enforcement and clarification of the decree. In making the award, the court did not state the basis for its decision but stated that "[t]he award of attorneys' fees to [Katy] is warranted for numerous reason[s] including the delay caused by [Luc's] refusal to exercise upon [Katy's] request, options equitably owned by [Katy]." This language links the award to the necessity of filing the enforcement action. A trial court may award reasonable attorney's fees in an enforcement or clarification action. *See* Tex. Fam. Code § 9.014; *McKnight v. Trogdon–McKnight,* 132 S.W.3d 126, 132 (Tex.App.–Houston [14th Dist.] 2004, no pet.). Although the trial court did not provide Katy with all of the relief she requested related to the enforcement action (*i.e.,* the trial court did not hold Luc in criminal contempt), it did order Luc to exercise the options as Katy had previously directed and turn the proceeds over to her. Contempt is not the only available remedy in a suit to enforce a divorce decree. *See generally* Tex. Fam. Code §§ 9.001–.014. Because Katy was required to file suit in order to enforce her right to determine when the stock options were to be exercised, the trial court did not abuse its discretion in awarding attorney's fees to Katy. *See* Tex. Fam. Code § 9.014; *Pahlavan v. Ghods,* No. 14–02–00585–CV, 2003 WL 21981819, at \*1–2 (Tex.App.–Houston [14th Dist.] Aug. 21, 2003, no pet.) (mem. op.). [11] Regardless of whether the trial court held Luc in criminal contempt, Katy nonetheless was required to pursue the lawsuit after Luc refused to exercise the options upon her demand and deliver the proceeds to her. [12]

## B. Sufficiency of the Evidence

 **\*8**  **[14]**   **[15]**   **[16]**   **[17]**  Luc next challenges the sufficiency of the evidence to support the reasonableness of the attorney's fees awarded. We will reverse a determination of the reasonableness of attorney's fees on the basis of a legal sufficiency challenge only if there is no evidence to support it. *See Redwine v. Wright,* No. 14–10–00030–CV, 2010 WL 5238572, at \*2 (Tex.App.–Houston [14th Dist.] Dec. 16, 2010, no pet.) (mem. op.). Factors that a factfinder should consider when determining the reasonableness of a fee include: the time, labor and skill required to properly perform the legal service; the novelty and difficulty of

the questions involved; the customary fees charged in the local legal community for similar legal services; the amount involved and the results obtained; the nature and length of the professional relationship with the client; and the experience, reputation and ability of the lawyer performing the services. *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex.1997). The trial court does not need to hear evidence on each factor but can consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *In re Marriage of C.A.S. & D.P.S.,* 405 S.W.3d 373, 387 (Tex.App.–Dallas 2013, no pet.); *Hagedorn v. Tisdale,* 73 S.W.3d 341, 353 (Tex.App.–Amarillo 2002, no pet.).

Luc begins by assailing the trial court's statement in its order and in its findings of fact and conclusions of law that Luc had stipulated to the reasonableness of Katy's fees. The supposed stipulation occurred when, toward the end of the trial, Katy's counsel began his testimony in support of fees:

[Luc's counsel]: Your Honor, I will stipulate that if he testifies, he will testify that the amount that he's claimed here [apparently indicating Exhibit M150, which was a billing statement] is his fees in connection with this matter.

[Katy's counsel]: That's correct. And my fees, [expert] fees, which have been paid through my firm. My fees, [expert] fees through my firm and [co-counsel's] fees. So if I understand the stipulation, he's stipulating not that they be paid, but that the rates and amounts charged are reasonable and necessary.

[Luc's counsel]: I stipulate that's what you're going to testify to.

[Katy's counsel]: All right. Well, do you stipulate to my qualifications and rate?

[Luc's counsel]: Yes.

[Katy's counsel]: All right. And [co-counsel's]?

[Luc's counsel]: All your experts, yes.

[Katy's counsel]: Very good. I would offer Exhibit M150, fees that were incurred solely for this enforcement.

....

[Luc's counsel]: May I see it? Your honor, we have no objection to this as the testimony he would give. We do object to paying fees.

Although it is not entirely clear exactly how broad the stipulation was intended to be, at a minimum, Luc's counsel stipulated to Katy's counsel's qualifications and rate and that Katy's counsel's would testify that "the rates and amounts charged [were] reasonable and necessary." At the conclusion of this exchange, the trial court admitted the detailed billing statement, and Katy's counsel further testified that "all of the actions on the [statement] were taken and all of the fees were reasonable and necessary in and around Harris County for similarly complex cases for similarly qualified lawyers." Luc's counsel did not ask any questions or present any opposing evidence regarding fees. In addition to its statement regarding the stipulation, the court further specifically found that the attorney's fees awarded were reasonable given the experience and expertise of counsel and the circumstances presented in the case.

On appeal, Luc contends that the stipulation regarding what Katy's counsel would testify to was insufficient to support the award of fees because it was only an admission regarding what counsel would say and not an agreement the fees were reasonable and necessary. While this much is true, having stipulated to Katy's counsel's qualifications and that he would provide testimony supporting the reasonableness of his fees (without the necessity of actually having to provide such testimony), and having failed to contest the evidence of fees, Luc's counsel essentially conceded that there was at least some evidence to support the reasonableness of the fees. At the time, Luc's counsel expressed concern only about whether Luc would be required to pay the fees, not about the reasonableness of the fees charged. Moreover, Katy's counsel then went on to testify as to the reasonableness of the fees and provide a detailed billing statement and a contract showing services provided, time spent, and amount charged. The trial court was entitled to and—according to its findings and conclusions—did consider the entire record, the particular circumstances of the case, and the common knowledge of the participants as lawyers and judges. *See In re Marriage of C.A.S. & D.P.S.,* 405 S.W.3d at 387; *Hagedorn,* 73 S.W.3d at 353. The evidence is sufficient to support the trial court's award of attorney's fees. [13]

### C. Expert Fees

**\*9** **[18]** **[19]** Luc further challenges the award of expert fees in the amount of $27,090.76 on the grounds that there is no legal or factual basis for the award. [14] Generally speaking, the fee of an expert witness constitutes an incidental expense in preparation for trial and is not recoverable as costs. *In re Weisinger,* No. 14–12–00558–CV, 2012 WL 3861960, at \*2–3 (Tex.App.–Houston [14th Dist.] Sept. 6, 2012, orig. proceeding) (mem. op.); *see also Stanley Stores, Inc. v. Chavana,* 909 S.W.2d 554, 563 (Tex.App.–Corpus Christi 1995, writ denied) (holding the trial court erred in making an equitable award of expert witness fees absent statutory authorization). As we explained in *Weisinger,* expert fees have been awarded under certain provisions of the Family Code, such as chapters 6 (governing suits for dissolution of marriage) and 106 (concerning suits affecting the parent-child relationship). Each of the cited chapters, however, contains provisions permitting courts to award expenses in addition to costs and attorney's fees. *See* Tex. Fam. Code § 6.708 (authorizing court to award attorney's fees, costs, and expenses in a divorce action), 106.001 (authorizing award of costs in SAPCR), 106.002 (authorizing award of attorney's fees in SAPCR). In contrast, chapter 9, subchapter A, governing enforcement actions such as this, only authorizes the award of attorney's fees and costs. *Id.* §§ 9.013 (authorizing award of costs in an enforcement action), 9.014 (authorizing award of attorney's fees in an enforcement action). Indeed, section 9.013 expressly states that costs may be awarded in such actions "as in other civil cases." Because expert fees are neither attorney's fees nor costs, and because chapter 9, subchapter A does not allow an award of expenses in an enforcement action, the trial court erred in awarding Katy her expert witness fees. [15] Accordingly, we modify the trial court's judgment to decrease the award of fees and costs by $27,090.76.

### D. Segregation

**[20]** **[21]** **[22]** **[23]** Next, Luc argues that Katy failed to properly segregate the fees expended in regards to causes of action on which attorney's fees are recoverable, such as the enforcement action, from those expended on causes of action for which fees are generally not recoverable, such as breach of fiduciary duty. Absent a contract or statute, trial courts do not have inherent authority to require one party to pay another party's attorney's fees; thus, claimants generally are required to segregate fees between claims for which they are recoverable and claims for which they are not. *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 311 (Tex.2006). However, when discrete legal services advance

both a recoverable and unrecoverable claim, the resulting fees are considered "intertwined" and need not be segregated in order to be recovered. *Id.* at 313–14; *Alief I.S.D. v. Perry,* 440 S.W.3d 228, 245 (Tex.App.–Houston [14th Dist.] 2013, pet. denied). Still, if any attorney's fees relate solely to a claim for which fees are unrecoverable, a claimant must segregate the recoverable from the unrecoverable fees. *Chapa,* 212 S.W.3d at 313; *Perry,* 440 S.W.3d at 246.

 **[24]**  The party seeking to recover attorney's fees has the burden of demonstrating that fee segregation is not required. *Westergren v. Nat'l Prop. Holdings, L.P.,* 409 S.W.3d 110, 138 (Tex.App.–Houston [14th Dist.] 2013), *aff'd in part, rev'd in part on other grounds,* No. 13–0801, —— S.W.3d ——, 2015 WL 123099 (Tex.2015). Here, when the trial court rejected Luc's segregation argument, the court had before it the parties' pleadings, the evidence presented on the substantive issues in the case, the testimony of Katy's counsel, and Katy's counsel's billing statements. All of Katy's causes of action involved essentially the same allegations regarding the same facts and sought essentially the same ultimate relief: exercise of the options as she directs and disbursement of the proceeds to her. Even if segregation were required in this case, Katy's counsel testified that the billing statements admitted into evidence represented "fees that were incurred solely for this enforcement." Luc's counsel did not object, cross-examine Katy's counsel regarding this statement, or present any evidence contradicting this representation. For the foregoing reasons, Luc's segregation arguments are without merit.

### E. Appellate Fees

 **\*10**  Lastly, Luc raises several complaints regarding the trial court's award of appellate fees to Katy. The court awarded Katy $25,000 in the event of an appeal to an intermediate court of appeals and $15,000 in the event a petition for review was filed with the Texas Supreme Court. Luc specifically complains that the award was not supported by sufficient evidence, was not conditioned on Katy's success on appeal, and was ordered to be paid the day after appeal was perfected, and that Katy was awarded post-judgment interest accruing on the amount of appellate fees from the date of the trial court's order.

### (i) Sufficiency of the Evidence

 **[25]     [26]     [27]**  We generally review a trial court's award of appellate attorney's fees for an abuse of discretion. *See, e.g., Law Offices of Windle Turley, P.C. v. French,* 164 S.W.3d 487, 493 (Tex.App.–Dallas 2005, no pet.). To be proper, there must be evidence of the fees' reasonableness pertaining to appellate work. *State and County Mut. Fire Ins. Co. ex rel. S. United Gen. Agency of Tex. v. Walker,* 228 S.W.3d 404, 410 (Tex.App.–Fort Worth 2007, no pet.). Luc acknowledges that at trial, Katy's lead counsel testified that if the case were appealed, the amounts awarded by the court were reasonable for attorneys with similar experience to himself and his co-counsel. Luc asserts, however, that this statement was too conclusory and unsupported by other evidence. The statement, however, was not made in a vacuum. As discussed above, Luc's counsel stipulated to the qualifications and rate charged by Katy's counsel, billing statements were admitted into evidence showing the work done on trial of the case, and the judge herself would have been familiar with the complexity of the case, the size of the record, and potential issues on appeal. This evidence was sufficient to support the trial court's award of appellate attorney's fees.

### (ii.) Unconditional Award

 **[28]     [29]     [30]**  Next, Luc complains that the award of appellate fees was not conditioned on Katy's success in the appeal. A trial court may not grant a party an unconditional award of appellate attorney's fees because to do so could penalize a party for taking a meritorious appeal. *In re Ford Motor Co.,* 988 S.W.2d 714, 721 (Tex.1998); *Watts v. Oliver,* 396 S.W.3d 124, 135 n. 3 (Tex.App.–Houston [14th Dist.] 2013, no pet.). However, an unconditional award of attorney's fees for appeal does not require reversal; instead, we may modify a trial court's judgment to make the award of appellate attorney's fees contingent upon the receiving party's success on appeal. *Keith v. Keith,* 221 S.W.3d 156, 171 (Tex.App.–Houston [1st Dist.] 2006, no pet.). Accordingly, we will modify the trial court's award of appellate fees in the present case to make it contingent on Katy's success on appeal.

### (iii.) Date Due and Accrual of Interest

 **[31]     [32]**  Lastly, Luc complains that the trial court ordered him to pay Katy's appellate fees within a day after she perfected her appeal in an intermediate appellate court or sought review in the Texas Supreme Court and provided that post-judgment interest would begin to accrue on the amount awarded for appellate fees as of the date the trial court entered its judgment. We have previously explained that, because an award of appellate fees depends on the outcome of the appeal, it is not a final award until the appeal is concluded and the appellate court issues its judgment; thus, the fees would not be due and interest on those fees should not begin to accrue until

the appellate court issues its judgment. *See Watts,* 396 S.W.3d at 134–35 (citing *Apache Corp. v. Dynegy Midstream Servs., Ltd. P'ship,* 214 S.W.3d 554, 566–67 (Tex.App.–Houston [14th Dist.] 2006), *rev'd in part on other grounds,* 294 S.W.3d 164 (Tex.2009), and *Protechnics Int'l, Inc. v. Tru–Tag Sys., Inc.,* 843 S.W.2d 734, 736 (Tex.App.–Houston [14th Dist.] 1992, no writ)). Accordingly, we further modify the trial court's judgment to clarify that payment of the fees is not due and interest on the fees does not begin until the appellate court issues its judgment. *See id.*

**\*11** We vacate the portions of the trial court's order that purport to clarify the divorce decree and that hold Luc breached his fiduciary duty to Katy, and we dismiss those causes of action. Additionally, we modify the amount awarded as attorney's fees and costs by subtracting $27,090.76 from the amount awarded. We further modify the trial court's award of appellate fees to make such fees contingent on Katy's success on appeal and to clarify that payment of the fees is not due and interest on the fees does not begin to accrue until the appellate court issues its judgment. We affirm the remainder of the trial court's order.

## V. Conclusion

### Footnotes

1     In a prior appeal from the decree, Katy, a native of Hong Kong, challenged the trial court's grant of permanent injunctions concerning international travel with the children. *Messier v. Messier,* 389 S.W.3d 904, 905 (Tex.App.–Houston [14th Dist.] 2012, no pet.). This court modified the decree to remove certain requirements that were not supported by the record, but otherwise affirmed the travel restrictions and the decree. *Id.* at 911.

2     The decree confirmed certain other stock options were his separate property.

3     Between the time the final decree issued and Katy filed the present action, the presiding judge of the trial court retired and a new judge was appointed.

4     The section of the order in which the instructions appear is titled "Declaratory Judgment & Clarification."

5     As will be discussed below, the order required the appellate fees to be paid the day after a notice of appeal was filed for an appeal to the court of appeals and the day after the Texas Supreme Court requested briefing if a petition for review was filed with that court. The appellate fees were not made contingent on a successful defense by Katy. The amount for an appeal to the court of appeals was set at $25,000, and the amount for a petition for review was set at $15,000.

6     Mootness is a jurisdictional issue, and we are required to review such issues even if not raised by the parties. *See M.O. Dental Lab v. Rape,* 139 S.W.3d 671, 673 (Tex.2004); *Robinson v. Alief I.S.D.,* 298 S.W.3d 321, 330 (Tex.App.–Houston [14th Dist.] 2009, pet. denied).

7     Luc asserts that issues two and three, concerning, respectively, the clarifications and breach of fiduciary duty finding, also are relevant to the question of whether the trial court properly awarded attorney's fees to Katy. As will be discussed more fully below, because we find the award of attorney's fees is supported by the trial court's determination that Katy had the right to decide when the options would be exercised, we need not consider whether the award was additionally supported by the clarifications or the breach of fiduciary duty finding. We further note that attorney's fees are generally not recoverable for breaches of fiduciary duties. *See Hollister v. Maloney, Martin & Mitchell LLP,* No. 14–12–00529–CV, 2013 WL 2149823, at \*2 (Tex.App.–Houston [14th Dist.] May 16, 2013, no pet.) (mem. op.). Issues two and three are therefore moot.

      In post-submission briefing, Luc urges application of the collateral consequences exception to the mootness doctrine. "The 'collateral consequences' exception has been applied when Texas courts have recognized that prejudicial events have occurred 'whose effects continued to stigmatize helpless or hated individuals long after the unconstitutional judgment had ceased to operate. Such effects were not absolved by mere dismissal of the cause as moot.' " *Gen. Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 571 (Tex.1990) (quoting *Spring Branch I.S.D. v. Reynolds,* 764 S.W.2d 16, 19 (Tex.App.–Houston [1st Dist.] 1988, no writ)). Luc's arguments appear premised on the notion that the mootness of these issues would leave the trial court's order unchanged, including the finding of a breach of fiduciary duty. He makes no argument that any disadvantage he perceives from the court's order would persist even once the portion of the order he complains about has been vacated. We find no merit in his argument. *See Reule v. RLZ Invs.,* 411 S.W.3d 31, 33 (Tex.App.–Houston [14th Dist.] 2013, no pet.) (declining to apply collateral consequences exception where appellant failed to explain why perceived disadvantage would persist after judgment was vacated).

8     Luc suggests in his brief that "Katy can be assured that Luc's decision to exercise options will be made with the utmost consideration for time and price as he will be acting, in part, for his own financial benefit, having been awarded 40% of the divisible options, with others confirmed as his separate property." But nothing in the record supports this assurance.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Luc suggests that the fact Katy could not own the options as per the Stock Incentive Plan means that the reference to her equitable ownership was a "contradiction in terms." But it is the very fact that she cannot legally own the options that apparently led the court to describe her ownership as equitable. Moreover, the fact that she could not legally own them does not necessarily mean she cannot control their exercise.

In his reply brief, Luc states without supporting citation that "imposition of a constructive trust ... vests in Luc the right to exercise the [options] at his discretion in Katy's best interest." At trial and in his briefing, Luc emphasized that he has significant expertise regarding his employer and the market value of its stock, and he asserts that the decree required him to use his discretion in exercising the options in order to maximize the benefit to Katy.

*See also* John J. Sampson & Harry L. Tindall, *et. al,* Sampson & Tindall's Texas Family Code Annotated 140 (2014) ("Before passage of [section 9.014] there was no provision for the recovery of attorney's fees against an uncooperative party after a divorce. Thwarting the order of the court elicited no punitive consequences, even when a party was found to be the wrongdoer. This section now makes clear that the award of attorney's fees is appropriate in such a fact situation.").

At least one court of appeals has observed that Section 9.014 does not expressly require that the trial court find a party as the prevailing party before awarding attorney's fees to that party. *See In re S.E.C.,* No. 05–08–00781–CV, 2009 WL 3353624, at *3 (Tex.App.–Dallas Oct. 20, 2009, no pet.) (mem. op.). "Rather, by its express language, the statute's only requirements are that the award be 'reasonable' and in connection with a proceeding to enforce a decree of divorce or annulment providing for a division of property." *Id.* Luc cites one case in support of his argument, *Preston v. Preston,* No. 04–03–00333–CV, 2004 WL 1835765 (Tex.App.–Houston [14th Dist.] Aug. 18, 2004, no pet.) (mem. op.). In *Preston,* we determined that the four-year statute of limitations governing breach of fiduciary duty causes of action applied where a constructive trust had been created rather than the two-year statute which generally governs suits to enforce the property. *Id.* at *2. We addressed the breach of fiduciary duty cause of action, however, as an action "to enforce the divorce decree." Section 9.014 authorizes trial courts to award reasonable attorney's fees in a proceeding to enforce a decree. Nothing in *Preston* restricts this authority.

Luc specifically mentions that the billing statements contained a few entries for an associate attorney and a paralegal. The evidence was sufficient to support these fees as well. As discussed, Luc's counsel stipulated that Katy's counsel was qualified and would testify regarding the reasonableness of the charged fees. Katy's counsel also testified in support of the reasonableness and necessity of the amounts contained within the billing statement. The charged rates were listed in the attorney-client contract that was admitted into evidence, and the trial judge was permitted to take her own knowledge into account regarding the case and the practice of law.

The expert fees were included as a line item in the billing statement by Katy's attorney that was admitted into evidence. In her briefing to this court, Katy does not offer any rebuttal to Luc's arguments concerning expert fees.

In dicta in *In re Slanker,* 365 S.W.3d 718, 720 (Tex.App.–Texarkana 2012, orig. proceeding), the Sixth Court of Appeals interpreted dicta in another court of appeals' opinion, *Parliament v. Parliament,* 860 S.W.2d 144, 147 (Tex.App.–San Antonio 1993, writ denied), as recognizing that expert witness fees were authorized in enforcement actions. We do not agree with this reading of the *Parliament* analysis, wherein the court was merely presenting and rejecting a party's argument. Regardless, as dicta from a sister court, the discussion in *In re Slanker* is not precedential. *See generally Walden v. Affiliated Computer Servs., Inc.,* 97 S.W.3d 303, 330 n. 22 (Tex.App.–Houston [14th Dist.] 2003, pet. denied).

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.