**Affirmed as Modified and Memorandum Opinion filed March 5, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00475-CV

---

## MICHAEL  SIMMONDS, Appellant

## V.

## AMY  WRIGHT, Appellee

---

**On Appeal from the 309th District Court
Harris County, Texas
Trial Court Cause No. 2022-01042**

---

## MEMORANDUM  OPINION

This is an appeal from a family violence protective order.  Appellant Michael Simmonds challenges the protective order in four issues, arguing that (1) the trial court committed reversible error by failing to make findings of fact and conclusions of law as timely requested; (2) the evidence is legally and factually insufficient "to support a rendering of a protective order"; (3) the trial court "erred in not conditioning the award of attorney's fees" on Michael's unsuccessful appeal; and (4) the trial court erroneously failed to consider Michael's income and ability

to pay in awarding attorney's fees. We affirm as modified.

## BACKGROUND

Appellee Amy Wright and Michael started living together in 2012 and married in 2015. They have a three-year-old son Cody.[1] The couple separated in October 2021. Amy filed an application for a protective order on January 6, 2022, alleging, among other things, that Michael had engaged in family violence. She provided a 16-page affidavit in support of her application. The application was brought for the protection of Amy, Cody, Amy's mother, and Amy's brother and his wife and daughters. Amy also asked for a temporary protective order, which the trial court signed a day later.

The trial court held hearings on Amy's application on February 11, 2022, and February 29, 2022. The trial court heard from witnesses, including Amy, Amy's brother, Michael, his sister, the couple's therapist Dr. Milner, and Houston Police Officer Mohamadi. The court also admitted numerous exhibits, including Amy's affidavit and Dr. Milner's report. On March 7, 2022, the court made its oral rendition granting a protective order and also made numerous findings on the record. That same day, Michael filed a request for findings of fact and conclusions of law.

On May 26, 2022, the court signed a final protective order. On June 22, 2022, Michael filed a notice of past due request for findings of fact and conclusions of law. Five days later, Michael filed a timely notice of appeal.

## ANALYSIS

Michael raises four issues on appeal, which we address in turn.

---

[1] In this opinion, we use a pseudonym for the name of the parties' minor child to protect his privacy.

2

## I.    Findings of Fact and Conclusions of Law

In his first issue, Michael argues the trial court committed reversible error by failing to issue findings of fact and conclusions of law when he timely requested them pursuant to Texas Rules of Civil Procedure 296 and 297.  He argues he was harmed by the trial court's failure because (1) he does not know which of the claims of family violence Amy alleged in her application the trial court found she proved by a preponderance of the evidence; (2) "it is unclear who the court even found [Michael] committed family violence against, or how it concluded that family violence would likely occur in the future"; and (3) "it is unclear how the Court reached its decision on attorney's fees."

In this case, the final protective order contained the findings mandated by the Texas Family Code.  *See* Tex. Fam. Code Ann. § 85.001 (The trial court "shall find whether:  (1) family violence has occurred; and (2) family violence is likely to occur in the future.").  The trial court complied with the statutory requirements by including the following findings in the final protective order:

> *3.    Findings*
>
> a. The Court finds that Applicant and Respondent are residents of Harris County, Texas and that both are domiciled in the state of Texas.
>
> b. The Applicant and Respondent are married but are separated.
>
> c. The Court finds that family violence has occurred, and that family violence is likely to occur in the future.
>
> d. The Court finds that Respondent, Michael Simmonds, has committed family violence.
>
> e. The Court finds that the following protective orders are for the safety and welfare and in the best interest of Applicant and other members of the family and household and are necessary for the prevention of family violence.

Michael's arguments are premised on the assumption that the trial court's findings

of fact must detail all the evidence or proof supporting the protective order; but that is not required. *See Phillips v. Phillips*, 651 S.W.3d 112, 120 (Tex. App.—Houston [14th Dist.] 2021, no pet.). Here, the final protective order already included a finding that family violence occurred and that family violence is likely to occur in the future; and the court was not required to make a finding on each statement or allegation made by Amy. *See id.*; *see also Peña v. Garza*, 61 S.W.3d 529, 531-32 (Tex. App.—San Antonio 2001, no pet.) (trial court is not required to make additional findings when protective order contains findings required by statute).

Michael further claims the trial court committed reversible error by not issuing findings of fact and conclusions of law regarding attorney's fees because "without findings of fact it is unclear how the Court reached its decision on attorney's fees." Although we take no position on whether the trial court was required under Rule 296 to issue findings of fact regarding the attorney's fees award, the lack of findings was not harmful in this case. *See Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam) ("Under Texas Rule of Civil Procedure 296, harm to the complaining party is presumed unless the contrary appears on the face of the record when the party makes a proper and timely request for findings and the trial court fails to comply."). As we discuss in more detail in section III of the opinion below, Michael failed to present evidence in the trial court that he lacked sufficient resources and is unable to pay the fees as assessed by the trial court. Thus, there is no harm.

Accordingly, we overrule Michael's first issue.

## II. Sufficiency of the Evidence

In his second issue, Michael contends the evidence is legally and factually insufficient to support the grant of the protective order.

**1.      Governing Law and Standard of Review**

"A court shall render a protective order as provided by Section 85.001(b) if the court finds that family violence has occurred and is likely to occur in the future." Tex. Fam. Code Ann. § 81.001; *see id.* § 85.001(a) ("At the close of a hearing on an application for a protective order, the court shall find whether: (1) family violence has occurred; and (2) family violence is likely to occur in the future."). In pertinent part, "family violence" means "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault or sexual assault, but does not include defensive measures to protect." *Id.* § 71.004(1); *see also id.* § 71.003 (defining "family").

A family member's actions can meet the definition of family violence if they involve a threat that reasonably places the other family member in fear of imminent harm. *Dolgener v. Dolgener*, 651 S.W.3d 242, 255 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *see also Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Even in circumstances in which no express threats are conveyed, the factfinder may nonetheless conclude that a person was reasonably placed in fear. *Dolgener*, 651 S.W.3d at 255-56; *Burt v. Francis*, 528 S.W.3d 549, 553-54 (Tex. App.—Eastland 2016, no pet.); *see also Wilmeth v. State*, 808 S.W.2d 703, 706 (Tex. App.—Tyler 1991, no pet.) (noting that even without verbal threats, a reasonable person may be placed in fear by a menacing glance and hand gesture).

Intentionally or knowingly causing physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative also meets the statutory definition. *Dolgener*, 651 S.W.3d

5

at 256; *see also* Tex. Fam. Code Ann. § 71.004(1). Because of the remedial nature of the Family Code's protective order provisions, courts broadly construe the provisions to effectuate its humanitarian and preventative purposes. *Dolgener*, 651 S.W.3d at 256; *see also Rodriguez v. Doe*, 614 S.W.3d 380, 385 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

"We review a trial court's findings in a protective order proceeding that family violence has occurred and is likely to occur in the future for legal and factual sufficiency." *Dolgener*, 651 S.W.3d at 256; *Caballero v. Caballero*, No. 14-16-00513-CV, 2017 WL 6374724, at *3 (Tex. App.—Houston [14th Dist.] Dec. 14, 2017, no pet.) (mem. op.).

In conducting a legal sufficiency review, we cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding. *In re A.C.*, 560 S.W.3d 624, 630-31 (Tex. 2018). "Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631.

Factual sufficiency, however, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding. In a factual sufficiency review, we must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding. *Id.* "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.*

We defer to the factfinder as to witness credibility and the weight afforded

6

their testimony. *Laufer v. Gordon*, No. 14-18-00744-CV, 2019 WL 6210200, at *4 (Tex. App.—Houston [14th Dist.] Nov. 21, 2019, no pet.) (mem. op.); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). Therefore, a trial court may accept or reject any or all of a witness's testimony and may resolve inconsistencies in a witness's testimony. *Laufer*, 2019 WL 6210200, at *4.

## 2. Evidence

At the hearing, the trial court heard testimony from several witnesses. First, the couple's marriage counselor, Dr. Milner,[2] testified that he met individually and jointly with Amy and Michael between July and December 2021. Michael and Amy "wanted help with communicating better" and "wanted help with anger management." Dr. Milner testified that Michael acknowledged "he had acted out of anger yelling, cursing and had grabbed Amy sometimes." Dr. Milner also stated that Michael had asked him to write a letter for Michael stating "[t]hat there was no physical violence or abuse." However, Dr. Milner testified that he refused to write a letter to that effect "[b]ecause there was physical abuse. There was violence." On cross-examination, Dr. Milner stated that examples of physical violence included grabbing and blocking. Dr. Milner affirmed that "based on statements and admissions made by the parties, that [he] believe[d] physical violence had in fact occurred."

Amy testified at length about her relationship with Michael over the years. She testified that she sustained a lot of injuries from Michael during their time as a couple that she classified as accidents, but she "no longer believe[d] that they were accidents." Amy testified about the times Michael had hurt her. One injury

---

[2] Dr. Milner testified he has "a BA in psychology. A master's in educational psychology, a master's in psychiatric clinical social work and a Ph.D. in positive clinical neuropsychology." He testified he received "training as it relates to identifying and or dealing with family violence within a family unit."

occurred on December 5, 2021, while she was laying on the couch with Cody. According to Amy, Michael was leaving to go to work and got frustrated because Cody was looking at pictures and did not acknowledge Michael saying goodbye. Amy testified Michael "got in our face, leaned over the couch. He put his hand on my shoulder and gripped it while he was leaning over the couch squeezing it, knowing that I have a bad shoulder. I reminded him, I said, that hurts. And I ended up having to push him off. He stumbled forward with the amount of weight and how hard he was gripping me." Amy described several other incidents in her affidavit, which was admitted into evidence.

Officer Mohamadi testified that he met Amy when he responded to a domestic disturbance call at the marital residence on December 22, 2022. Officer Mohamadi described Amy as frightened, stressed, and extremely reserved. She did not want to talk to Officer Mohamadi near the house, telling him "that her husband has various video cameras and audio devices that may" record their conversation, so she "felt it would be best if she spoke" to the police in private. Officer Mohamadi and his partner "had to escort her to our patrol vehicle where she felt more secure, as far as giving her statement." Amy also showed Officer Mohamadi her arm, and he could observe a small mark that Amy claimed was caused by the "altercations that she had with her husband."

Amy's brother Mark testified that, over the past few years, he noticed Amy having injuries "more frequently than ever have historically from her and more frequently than my family is injured." When he would confront her about the injuries, she "would often classify them as accidents." When he "would try to probe and go deeper, she started shying away and becoming defensive and protective of Michael and it — would try to change the subject."

The trial court also heard Michael's testimony, who gave his version of the

events that led to Amy's injuries. Among other things, he denied squeezing Amy's shoulder and intending to cause her physical harm. He denied ever raising his fist and threatening Amy. He testified he did not intend to cause Amy physical harm or bodily injury.

### 3. Application

Michael argues the evidence is legally insufficient to support the grant of the protective order because Amy has not provided more than a scintilla of evidence that Michael committed family violence. We disagree because Amy's trial testimony and affidavit, Dr. Milner's testimony and clinical summary of therapy sessions, and Officer Mohamadi's testimony, as described above, support the trial court's finding that Michael committed family violence. Viewing this evidence in the light most favorable to the trial court's ruling, we conclude the evidence is legally sufficient to support a finding that Michael committed family violence.

We also disagree with Michael's contention that "the evidence is factually insufficient, because [Amy] has only provided evidence of times in which either insignificant contact was made between parties, or times when Appellant and Appellee, at least at one time, agreed that contact or injury was made by accident." Contrary to Michael's assertion, the evidence does not show merely "insignificant contact" occurred between Amy and Michael. Michael's actions caused Amy injuries; evidence shows that Michael jumped on Amy, grabbed and squeezed her, blocked her, and raised his fist at her as if threatening to hit her. Courts determined that threats and blocking constitute family violence. *See Boyd*, 425 S.W.3d at 431 (finding evidence of Boyd blocking Palmore's car with his body to prevent her from leaving supports family violence finding even in the absence of physical contact or harm); *Clements v. Haskovec*, 251 S.W.3d 79, 85 (Tex. App.— Corpus Christi–Edinburg 2008, no pet.) (finding "the allegations that Ira made

9

threats to his wife and daughter and raised his fist at his daughter are sufficient to implicate his conduct as 'family violence'").

Further, Amy testified that although she sustained a lot of injuries from Michael during their time as a couple that she classified as accidents, she "no longer believe[d] that they were accidents." She explained that she referred to the injuries as accidents because "Michael has explosive anger that he can't control" and she was afraid if she disclosed the injuries were not accidents, Michael "could retaliate in a much more dangerous way," hurt her, and hurt Cody "in a crossfire." The trial court as the sole judge of the credibility of the witnesses and the weight to give their testimony may accept or reject any or all of a witness's testimony and may resolve inconsistencies in a witness's testimony. *See City of Keller*, 168 S.W.3d at 819; *Laufer*, 2019 WL 6210200, at *4.

Michael further asserts Officer Mohamadi's testimony that Amy told him that Michael "wrapped his arm around her right arm to try and use[] force to pry the child from her" is "contradicted by the story told by [Amy], because she only claims that [Michael] pressed his forearm into her upper arm and pressed down as he was trying to grab the child from her." Assuming there is a discrepancy (albeit very minor), the trial court may accept or reject any or all of a witness's testimony and may resolve inconsistencies in a witness's testimony. *See City of Keller*, 168 S.W.3d at 819; *Laufer*, 2019 WL 6210200, at *4. We defer to the factfinder as to witness credibility and the weight afforded their testimony. *Laufer*, 2019 WL 6210200, at *4.

Having reviewed the record as a whole, we cannot conclude that a finding of family violence was so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. Thus, we conclude the evidence is factually sufficient to support a finding that Michael committed family violence.

10

## III.   Attorney's Fees

Michael presents two complaints regarding the trial court's award of attorney's fees.

### 1.   Unconditional Appellate Fees Award

In his third issue, Michael argues the trial court "erred in not conditioning the award of attorney's fees upon [his] unsuccessful appeal." We agree.

A trial court may not grant a party an unconditional award of appellate attorney's fees because doing so could penalize a party for taking a meritorious appeal. *Messier v. Messier*, 458 S.W.3d 155, 170 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding)).  Because an unconditional award of appellate attorney's fees is improper, the trial court must make the award of attorney's fees to an appellee contingent upon the appellant's unsuccessful appeal. *Debrock v. Debrock*, No. 03-21-00308-CV, 2021 WL 5498757, at *5 (Tex. App.—Austin Nov. 24, 2021, no pet.) (per curiam); *Austex Tree Serv., Inc. v. UniFirst Holdings, Inc.*, No. 01-18-00050-CV, 2019 WL 2621732, at *9 (Tex. App.—Houston [1st Dist.] June 27, 2019, no pet.) (mem. op.).  However, an unconditional award of attorney's fees for appeal does not require us to reverse the trial court's order; instead, we may modify the order to make the award of appellate attorney's fees contingent upon the receiving party's success on appeal. *Debrock*, 2021 WL 5498757, at *5; *Austex Tree Serv., Inc.*, 2019 WL 2621732, at *9; *Messier*, 458 S.W.3d at 170.

Amy concedes the trial court committed error and improperly awarded her unconditional appellate fees.  But she claims that because Michael only asked for a rendition and failed to ask this court to modify the protective order to make the

11

appellate fees award conditional, we may not grant him relief.  We reject Amy's contention that we are foreclosed from awarding less relief than Michael requested because appellate courts may grant less relief than requested, but they may not grant more relief than requested.  *See Zaidi v. Shah*, 502 S.W.3d 434, 446 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see also Enzo Invs., LP v. White*, 468 S.W.3d 635, 654 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

Accordingly, we sustain Michael's third issue, and we modify the trial court's award of appellate fees in the present case to make it contingent on Amy's success on appeal.

### 2.    Timeframe for Payment of Attorney's Fees

In his fourth issue, Michael asserts the trial court abused its discretion in ordering him to pay attorney's fees within 62 days after the protective order was signed.

We review a trial court's attorney's fees award in a protective order proceeding for an abuse of discretion.  *Dolgener*, 651 S.W.3d at 265; *Laufer*, 2019 WL 6210200, at *3.  A trial court abuses its discretion if it rules arbitrarily, unreasonably, without regard to legal principles, or without supporting evidence. *Laufer*, 2019 WL 6210200, at *3.

Under Texas Family Code section 81.005, a trial court may assess reasonable attorney's fees against a party who, like Michael, was found to have committed family violence as compensation for the services of a private or prosecuting attorney.  *See* Tex. Fam. Code Ann. § 81.005(a).  "In setting the amount of attorney's fees, the court shall consider the income and ability to pay of the person against whom the fee is assessed."  *Id*. § 81.005(b).  Section 81.005(b) neither says that income and ability to pay are the only factors a court may

12

consider in setting the amount of a reasonable attorney's fee nor does it prohibit consideration of other factors; it merely mandates consideration of one factor: "the income and ability to pay of the person against whom the fee is assessed." *Laufer*, 2019 WL 6210200, at *3; *see* Tex. Fam. Code Ann. § 81.005(b).

We previously determined that section 81.005 "'creates a divided burden of proof on the issue of the amount of attorney's fees to be assessed in a family violence protective order case.'" *Sylvester v. Nilsson*, No. 14-19-00901-CV, 2021 WL 970924, at *8 (Tex. App.—Houston [14th Dist.] Mar. 16, 2021, no pet.) (mem. op.) (quoting *Ford v. Harbour*, No. 14-07-00832-CV, 2009 WL 679672, at *6 (Tex. App.—Houston [14th Dist.] Mar. 17, 2009, no pet.) (mem. op.)). Amy, as the applicant for a family violence protective order that included a request for attorney's fees, had the initial burden to request and provide competent evidence proving she incurred reasonable attorney's fees as a result of applying for and prosecuting her application for a protective order. *See* Tex. Fam. Code Ann. § 81.005(a); *Dolgener*, 651 S.W.3d at 265-66; *Sylvester*, 2021 WL 970924, at *8.

In response and pursuant to subsection (b), Michael was obligated to provide evidence addressing his ability to pay the attorney's fees sought by Amy. *See* Tex. Fam. Code Ann. § 81.005(b); *Dolgener*, 651 S.W.3d at 266; *Sylvester*, 2021 WL 970924, at *8. Because Michael's burden under subsection (b) is not to deny the fees incurred by Amy but to avoid being assessed some or all of those fees because of an independent reason (*i.e.*, his inability to pay), the burden is in the nature of an affirmative defense. *See Sylvester*, 2021 WL 970924, at *8; *Ford*, 2009 WL 679672, at *6. Thus, Michael had the burden to come forward with evidence on that subject if he wanted the trial court to consider his ability to pay any assessment of Amy's asserted attorney's fees. *See Sylvester*, 2021 WL 970924, at *8; *Ford*, 2009 WL 679672, at *6.

13

Here, Michael does not challenge the reasonableness or the amount of attorney's fees the trial court awarded to Amy. He only complains that he is unable to "pay $59,857.00 in attorney[']s fees within sixty-two days after the judgment was signed." He asserts the trial court abused its discretion in ordering him to "pay nearly all of his yearly gross salary in attorney's fees within a two-month time." In that regard, Michael states the evidence showed the couple's income per their 2018 joint income tax return was $56,019 and per their 2019 joint income tax return was $48,214. However, those tax returns were three and four years old; Michael testified at the February 2022 hearing that he earns $57,800 per year as a high school teacher and an additional $8,000 to $10,000 per year as a bartender.

Michael states in his brief that Amy "offered a financial information statement which detailed the parties['] monthly expenses, which totaled $8,940.52 a month. The evidence indicates that Mr. Simmonds was the one covering the majority of the monthly expenses, because he was earning the majority of the income." Although Amy's financial information statement ("FIS") listed numerous expenses in the amount of $8,940.52, Michael cites no evidence in the record to support his assertion that he pays the majority of those expenses. Regarding the FIS, Amy testified that many of the bills she listed are in her name, and she confirmed that if the expense is listed on the FIS, she is "listed as a source of debt satisfaction." Amy's FIS listed, among other things, expenses for homeowner's insurance and taxes, utilities, exterminator, telephone, security system, flood insurance, groceries, medical/psychologist/psychiatrist, gas and car repairs, car insurance, clothes, pet supplies, loans, and day care for Cody.

Michael provided no FIS or any other evidence showing what his monthly expenses are. He testified he makes $65,000 to $68,000 per year. He testified he

14

has to "pay rent and utilities and insurance and groceries and all of the, sort of regular stuff that it takes to live. And I also have to — have a son, so I pay for his day care and his groceries and clothes." But Michael provided no dollar amount regarding these expenses. Evidence showed that he did not have to pay for Cody's health insurance. Also, Amy stated that she is responsible for the expenses Michael claimed he is paying.

Michael claims there was no evidence that he "had a large sum of money in an account somewhere to cover these attorney's fees." But Michael did not offer any evidence that he did not have "an account somewhere", other assets, or help from his family which would enable him to pay the award. Considering that Michael only complains about the timeframe in which the trial court ordered him to pay Amy's attorney's fees, he also did not file a motion for rehearing or a motion for new trial supported by an affidavit or other documents after the court signed its order to show his inability to pay the fees award as ordered. It was Michael's burden to avoid being assessed Amy's attorney's fees within the ordered timeframe based on his inability to pay. *See Sylvester*, 2021 WL 970924, at *8; *Ford*, 2009 WL 679672, at *6. Even after the court signed the protective order, Michael made no effort to present evidence in the trial court that he lacked sufficient resources and is unable to pay the fees within the assessed timeframe.

Accordingly, we overrule Michael's fourth issue.

## CONCLUSION

We modify the trial court's protective order to provide that the court's award of appellate attorney's fees is made expressly contingent upon the success of Amy's appeal. We affirm the remainder of the challenged portions of the trial court's protective order as modified.

15

/s/     Meagan Hassan
                Justice


Panel consists of Chief Justice Christopher and Justices Bourliot and Hassan.